**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO.: 3:25-CR-70-01 |
| v. | ) | |
| | ) | JUDGE CRYTZER |
| KEIRSTEN ARMANDA GRACE HOOPER | ) | |

**THE UNITED STATES SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**

Defendant has entered into a plea agreement of the kind specified in Federal Rules of Criminal Procedure 11(c)(1)(C). The United States and Defendant have agreed that the appropriate disposition of this case is a sentence of one hundred eighty (180) months imprisonment, followed by a term of supervised release, as well as any lawful fines, special assessment fees, forfeiture and restitution[1] imposed by the Court. [Doc. 41, ¶ 7]. The agreed sentence is a variance below the guideline range for justifiable reasons. The facts of this case are outside the heartland of other cases involving sexual exploitation of a child in violation of 18 United States Code § 2251 (a) & (c). The United States respectfully asks this Court to accept the specific sentence agreed to by the parties. The United States will justify the requested guideline sentence below.

If a plea agreement includes a specific sentence or range of sentence, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Court may accept the agreement if the Court is satisfied that: (1) the agreed sentence is within the applicable guideline range; or (2)(A) the

[1] The victim has not yet responded to whether she will request restitution. It is unlikely that a request will be made.

agreed sentence range is outside the guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form. *See* U.S.S.G. § 6B1.2(c).

In determining whether the sentencing goals are met, this honorable Court begins its analysis with calculating the proper guideline range and remains cognizant of the range during the sentencing hearing. The guideline range serves as an advisory benchmark. *See United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160L. Ed. 2d 621 (2005). In a mine-run case, the guideline recommendation of a sentence range will reflect a rough approximation to carry out the 18 U.S.C. § 3553(a) objectives. *See United States v. Lee*, 974 F.3d 670, 673 (6th Cir. 2020). "To avoid sentence disparities, the Guidelines provide a transparent and predictable sentencing range for defendants who fall with the "heartland" of average cases "to which the Commission intends individual Guidelines to apply." *Kimbrough v. United States*, 552 U.S. 85, 109, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007).

Calculating the advisory guideline range specific to Project Safe Childhood (PSC) crimes is often complicated by the specific facts surrounding the case. This case is especially so as the facts of the case are outside the "heartland".

Defendant's guideline range calculated in the Presentence Investigation Report (PSR) of 324 months to 360 months was objected to by both parties. [Docs. 47 and 48]. The parties agree that applying the guideline range as calculated in the PSR would produce a sentence greater than necessary to comply with the 18 U.S.C. § 3553(a) factors.

While the procedural reasonableness of arriving at the correct guidelines range is important, in a case that is outside the heartland a substantive reasonable sentence based on the analysis 18 U.S.C. § 3553(a) factors to the case specific facts is paramount. "[A] district court is

well within its discretion to vary from the advisory Guidelines when the sentencing judge finds a particular case falls outside the heartland." *United States v. Milliron*, 984 F.3d 1188, 1198 (6th Cir. 2021). A Court's decision to assign more or less weight to a given factor is "a matter of reasoned discretion, not math." *United States v. Rayyan*, 885 F.3d. 436, 442 (6th Cir. 2018). If the sentence falls outside the guideline range, "it is not per se or even presumptively unreasonable." *United States v. Borho*, 485 F.3d 904, 912 (6th Cir. 2007).

The United States believes this Honorable Court will find the facts of this case outside the heartland of other similarly situated cases. Therefore, the United States sentencing memo will focus on an analysis of the 18 U.S.C. § 3553(a) relevant factors as applied to the distinctive facts of the case. The analysis will justify the one hundred eighty (180) month sentence of imprisonment agreed upon by the parties.

## ANALYSIS OF THE 18 USC § 3553(a) FACTORS

Analysis of the 18 U.S.C. § 3553(a) factors applied to the specific facts surrounding the case at bar warrant a stringent sentence of imprisonment. The specific facts of this case are disturbing and serious. A sentence of one hundred and eighty (180) months imprisonment followed by supervised release is a serious sentence and fits the facts of this specific case which are outside the heartland of cases. In this case, it is important to consider the nature and circumstances of the offense, both general and specific deterrence and unwarranted sentence disparities as this is not a mine-run case. *See 18 USC § 3553(a)(1)*.

1. **The Nature and Circumstances of the Offense**

In March of 2025, the 15-year-old victim came to law enforcement with video containing child pornography (CP) of herself and Defendant that she had received through Snapchat over the internet. [Doc. 41, ¶ 15, 16]. At the conclusion of the video, the camera turns showing Co-

defendant Hood as the person who produced the video. *Id.* at 17. On February 5, 2025, Co-defendant Hood, who was 19 years of age at the time, filmed the intoxicated nude victim and the clothed Defendant in a sexual act on his bed. *Id.*at 17, 18. In the video, Defendant also appeared intoxicated. Defendant was videoed holding a black semi-automatic pistol. *Id*. at 17. Defendant used the gun to fondle the victim's vagina, then spit on the pistol, insert it into the victim's vagina, and pulled the trigger. *Id*. at 17, 23. The gun did not fire, and the three were heard laughing prior to the video ending. *Id.* at 18.

Co-defendant Hood was interviewed at his home by law enforcement. *Id.* at 17. Co-defendant Hood admitted he filmed the CP of the victim and later sent the video to the victim and Defendant. *Id*. at 17-18. Co-defendant Hood provided the weapon used in the video to law enforcement, which contained a magazine with 14 rounds. [Doc. 42 at 20]. Co-defendant Hood told law enforcement that during the production of the video, he had a sexual relationship with both the victim and Defendant. [*Id.* at 22; Doc 41 at 20]. Co-defendant Hood also told law enforcement that three months prior to the production of the video, he and the victim had sexual relations, which always included both voluntarily consuming alcohol. [Doc. 41 at 20]. Further, Co-defendant Hood produced other CP videos of the victim with himself and Defendant, which he provided to law enforcement. *Id.* at 21.

Evidence of texts messages sent on different dates were found written by the victim to Co-defendant Hood discussing how she was going to get to his house; telling Co-defendant Hood that she lied to her grandparents, that Defendant lived at Co-defendant Hood's home in order to gain permission from her grandparents to come over, and when she would be arriving. *Id*. at 21-22.



Case 3:25-cr-00070-KAC-JEM Document 60 Filed 10/15/26 Page 4 of 10 PageID #: 260

The nature and circumstances of Defendant's crime lift this case outside the heartland of similarly situated cases. The dangerous, sadistic, sexual act Defendant did to the victim is extremely difficult and disturbing to watch. The alcohol induced idea for the act of inserting the gun into the minor's vagina and pulling the trigger may have come from a rap song the three were listening to just prior to the criminal act. It is undisputed that the three were voluntarily intoxicated. Although there is certainly no excuse or justification for the crime, this specific crime did not appear pre-planned by the defendants. The other CP videos involving the three did not include sadism/masochism.

Both the defendants and the victim came together voluntarily to the home of Co-defendant Hood with the intent to drink and participate in sexual activity, as they had done on previous occasions. The minor victim can NOT consent to the aggravated sexual battery perpetrated on her by the defendants. Period. But in applying the § 3553(a) factors, it is relevant that there is nothing in the facts indicating the victim was being threatened, forced, or coerced by the two co-defendants.

There were multiple CP videos of the victim admittedly produced by Co-defendant Hood, some of which also involved Defendant. The sadism in the video to which both Defendants are pleading guilty seems to be an isolated, albeit very disturbing, crime committed against a 15-year-old by two adults, which must be appropriately punished.

The investigation into the crime did not reveal that the specific CP video was distributed to anyone other than the victim and Defendant. To date, the video has yet to surface on the internet. Hopefully this means the video was not meant for general consumption by either co-defendant so that the victim would be victimized for the rest of her life. This is unlike mine-run

cases where defendants produce child exploitation videos for money, infamy, or getting other CP in return. Most CP producers do not produce simply for their own private collection.

2. **Adequate Deterrence to the Criminal Conduct**

There is a great need to deter Defendant and other would-be child sexual exploiters from ever committing a similar crime. *See 18 U.S.C. § 3353(a)(2)(B)*. This factor guides the Court to consider the need for a sentence that affords adequate specific and general deterrence to criminal conduct. Specific deterrence deters similar crimes by the defendant who is being sentenced. General deterrence deters criminal actions by others who may contemplate committing similar offenses. A sentence of one hundred eighty (180) months imprisonment is consistent with both purposes.

Specific deterrence is extremely important if Defendant is to integrate back into society after serving her sentence. A fifteen (15) year imprisonment will hopefully send a message that her crime was serious and will not be tolerated by society. Defendant was cooperative when law enforcement requested she come to the station for questioning. Defendant will have plenty of time while serving her sentence to ponder what she did and how she could easily have avoided a federal prosecution. Hopefully, when she assimilates back into society she will have learned to respect minors and the laws protecting them. If she one day decides to have children, hopefully she will appreciate why there are laws protecting children from crimes like she committed against the victim.

This conviction will always be a badge Defendant will have to wear; but to ensure the safety of children, Defendant should also serve a substantial amount of time on supervised release at the completion of her imprisonment.

In cases involving sexual violence against minor children, there is also a critical need for general deterrence. The internet has made child predators' predilections far too easy to obtain. Young adults need to be deterred from committing crimes against children, especially sexual ones. A fifteen (15) year sentence is a long sentence for anyone. The message will be sent that age does matter when you have sexual contact with a minor. You will be prosecuted!

Young adults need to understand that with sexual activity comes great responsibility. A person's age matters, just as their privacy does. A one hundred and eighty (180) month imprisonment sentence sends this important message to would-be young sex offenders: society will not tolerate crimes against minor children, especially if that crime is caught on tape and sent out over the internet. If caught, a lengthy sentence will be imposed.

3. **Unwarranted Sentence Disparities**

The last key factor to be analyzed is unwarranted sentence disparities. *See 18 U.S.C. §3353(a)(6).* This consideration touches on all the § 3553(a) factors. The more individualized and fact driven a sentence, the lesser the risk of that the sentence will create an unjustified disparity. *United States v. Boucher*, 937 F.3d 702, 712 (6th Cir. 2019). Substantial variances should be supported by substantial reasons. *See United States v. Henry*, 545 F.3d 367, 386-87 (6th Circ. 2008).

The specific facts of this case separate it from the mine-run child sexual exploitation case. That is NOT to say that the crime Defendant committed is not serious. In most cases, the United States Sentencing Guidelines (U.S.S.G.) manual enhancements are spot on. However, there will always be cases with facts not contemplated by the specific enhancements. This case is a prime example.

For instance, pursuant to U.S.S.G. § 2G2.1(b)(4), Defendant received a four (4) point enhancement for the sadistic CP video she and Co-defendant Hood produced. This was an appropriate enhancement based on not only the act itself, but because of potential death that could have resulted. Usually in mine-run cases, if there is sadistic/masochistic CP in the defendant's collection, there are more than just one or two images/videos and victims. Importantly, the defendants producing sadistic/masochistic images/videos are doing so for the sexual pleasure of capturing the fear of the victim. Defendant was in other CP videos with the victim in various sexual acts produced by Co-defendant Hood. None of the other videos involving the defendants and the victim contain sadism/masochism CP. The CP video to which both defendants are pleading was horrific, and a strict punishment should be ordered; but there is no evidence that this sadistic act was more than a one-off, and that fact should be taken into consideration to ensure a just punishment.

The U.S.S.G. § 2G2.1(b)(5) provides for an additional two (2) point enhancement if the minor was in the custody or control of the defendants. It is undisputed the victim conjured up a story for her grandparents, enabling her to stay at the home of Co-defendant Hood with the defendants. [Doc. 42 ¶ 23]. There was no evidence that the grandparents had any communication with Defendant to request Co-defendant Hooper take responsibility for, be in control of, or have custody of the victim.

Defendant was twenty-three (23) years old at the time of the crime. She was eight (8) years older than the victim. She was intoxicated, but should have known better than to commit sexual crimes against the victim.

There was no evidence to prove Defendant used deceit to misrepresent who she was to persuade, entice, or coerce the victim to travel to Co-defendant Hood's home for sexual activity. *See U.S.S.G. § 2G2.1(b)(6)*.

Defendant had one victim, and, luckily, she was uninjured or Defendant would have been facing very different charges. Law enforcement to date has not found a copy of the CP video on the internet. In most mine-run cases, the producers of the CP want their minor victims to feel scared, feel loss of control ,and do not want foreign objects or body parts placed in or on their bodies. In mine-run-cases, the intent of producing the CP is to get it out on the internet for the rest of the victim's life. Most exploiters produce for something in return, be it money, recognition, or other CP. The intent of Defendant is quite different than that of the mine-run producer. Defendant participated in other CP videos with Defendant, however none contained sadistic/masochistic acts. [Doc. 41, ¶ 22].

Based on the facts of this case, it is unlikely that Defendant will ever be a part of producing CP again, much less victimize a minor. However, her crime is serious and justice must be served.

The Guideline Calculation for Defendant also included a two (2) point enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) for vulnerable victim. *Id*. at 33. The victim is considered vulnerable because she was intoxicated during the crime, of which Defendant was aware. *Id*. The United States takes no position, however, but does believe that there are additional facts that need to be considered in addition to the fact the victim was intoxicated. The evidence of multiple CP videos taken on different dates where the victim and the co-defendants were inebriated suggest the minor victim voluntarily consumed liquor. While Defendant was the only

one who could legally purchase alcohol, there is nothing in the facts that indicated she purchased the alcohol when any of the videos were being produced.

If the U.S.S.G. § 3A1.1(b)(1) enhancement for vulnerable victim is to be applied, needing only Defendant's knowledge of the victim's intoxication, then it has been met. However, for a sufficient but not greater than necessary sentence, the intoxication part of the facts should be considered in a holistic sense, not simply whether *per se* the victim was intoxicated. There is nothing in the facts to demonstrate the victim was duped or forced to drink alcohol. In fact, the evidence showed it was not the first time that she had voluntarily imbibed with the two co-defendants.

WHEREFORE, Defendant has committed a serious crime, and the parties are requesting a serious sentence that fits the specific crime. Defendant's crime is outside the heartland and, as a result, the United States requests this Honorable Court to impose a one hundred eighty (180) month term of imprisonment on Defendant followed by a set number of years of supervised release to ensure the safety of minors entering adulthood while Defendant is reacclimating back into society, along with any fines and assessments this honorable Court deems fit.

Respectfully submitted this 15th day of October 2026,

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By: *s/ Jennifer Kolman*
Jennifer Kolman
Assistant United States Attorney
GA Bar #427930
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
*jennifer.kolman@usdoj.gov*